# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Z..M., a minor under the age of eighteen through his parent, Ashley Manley for themselves, and on behalf of a class of those similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>Joshua Baker, in his official capacity as Director of South Carolina Department of Health and Human Services (SCDHSS),<br><br>Defendant(s). | Case No.: 3:18-cv-1370-JMC |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF

## PRELIMINARY STATEMENT

1. This is a class action for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201(a), 42 U.S.C. §1983, Federal Rule of Civil Procedure 65 and common law to establish the rights of Lead Plaintiff Z.M., through his parent, Ashley Manley (hereafter "Z.M." or "Plaintiff") and all South Carolina children under the age of twenty-one with an Autism Spectrum Disorder (an "ASD") who receive Medicaid services and have been prescribed medically necessary applied behavioral analysis treatment (hereinafter referred to as "ABA").

1

2. Medicaid's Early Periodic Screening Diagnostic and Treatment (EPSDT) mandate requires that all necessary care to correct or ameliorate defects, illnesses, and conditions be made available to all Medicaid-eligible children.

3. In its July 7, 2014 Bulletin, CMS[1] stressed that the EPSDT mandate is fully applicable to medically necessary treatments for autism, such as ABA.

4. ABA works. Landmark studies on the use of ABA to treat autism have demonstrated that with intensive intervention by trained professionals, 47 percent of children were able to be mainstreamed in public schools while another 42 percent made substantial improvements in functioning and required a much lower intensity of supports.

## SOUTH CAROLINA'S REIMBURSEMENT RATE IS AMONG THE WORST IN THE NATION

5. South Carolina's reimbursement rate for medically necessary ABA services is among the worst in the nation and has severely limited and will continue to limit children's access to medically necessary legally required treatment.

6. As of January 1, 2017, SCDHHS rates for registered behavior technicians (RBTs) who provide direct ABA treatment to children under supervision of Board Certified Behavior Analysts were $13.58 or $15.52 per hour depending on the qualifications of the technician. These rates were set over a decade ago[2] in connection with South Carolina's Pervasive Developmental Disorder (PDD) Waiver at a time when Medicaid coverage of

---

[1] At a federal level, the Medicaid Act is administered by the Secretary of Health and Human Services ("HHS"), who in turn, exercises authority through the Centers for Medicare and Medicaid Services ("CMS")

[2] On February 21, 2018, SCDHSS gave public notice effective on or after July 1, 2018, SCDHHS proposes to amend the South Carolina Title XIX State Plan to update the rate-setting methodology for Autism Spectrum Disorder Services. While hopeful, South Carolina's children can no longer wait for medically necessary care.

ABA as a category of medical assistance under EPSDT was almost non-existent across the country and there was little information on reasonable rates.

7.     SCDHHS recently announced a negligible increase to $17.28 dollars per hour—less than 40 percent of the average rate paid by other states, and less than 60 percent of the next lowest rate in the country as identified in the attached chart (Exhibit 1).

### THE ABSENCE OF MINIMALLY ADEQUATE RATES RESULTS IN A LACK OF PROVIDERS AND NO ACCESS TO TREATMENT

8.     SCDHHS' continuing failure to set minimally adequate provider rates has had devastating effects on access to treatment. As set forth in legislative testimony of then Director of SCDHHS Christian Soura on January 31, 2017, it is undisputed that of the 1,066 children approved for services less than half that number (495 children) had been able to locate a provider and receive any services at all.

9.     Even as to the minority of children actually receiving some services, Director Soura conceded that there was no assurance that they were receiving the medically necessary treatment hours they required. In addition to those currently waiting for services under the EPSDT interim program, upon information and belief there are approximately 1500 children still on the PDD waiver waiting list, most of whom are eligible for EPSDT services.

10.     At least four providers have recently announced that they will no longer be taking Medicaid clients, including one provider—Palmetto Autism Innovations, which had been serving 70 children on Medicaid—going out of business entirely as of June 30. Of the remaining providers accepting Medicaid, it appears that most are either not accepting new Medicaid clients or are placing new clients on waiting lists.

## THE IRREPARABLE HARM FROM LACK OF ACCESS
## TO MEDICALLY NECESSARY TREATMENT

11.     The lack of access to medically necessary treatment has caused and will continue to cause substantial, and in many cases irreparable, harm to South Carolina children and will result in enormous future costs to the state and taxpayers.

12.     As with any serious condition, if treatment is not promptly provided, the child will not get better. We readily understand this when a child has cancer or a heart condition. The situation of a child with autism is no different. Absent prompt treatment, an autistic child's prognosis is dramatically worsened, treatment becomes more difficult and more costly, and the long-term costs to the state for special education, emergency care, restrictive placements, and lost productivity are inescapable.

13.     The debilitating effect of these delays and denials of care is profound and long-lasting. Expedited access to treatment is critical in treating ASD. Indeed, the American Academy of Pediatrics has since 2007 recommended intervention as soon as an ASD diagnosis is seriously considered rather than deferring until a definitive diagnosis is made[3].

14.     Delays in treatment are not only likely to worsen symptoms and diminish long-term outcomes, they pose additional risks where a child is exhibiting certain behaviors such as aggression or self-injurious behaviors.

15.     A central purpose of EPSDT is to "[a]ssure that health problems found are diagnosed and treated early, before they become more complex and their treatment more costly."[4]

---

[3] Pediatrics, Vol. 120, No. 5, Identification and Evaluation of Children with Autism Spectrum Disorders (2007), p.1163.

[4] EPSDT-A Guide for States: Coverage in the Medicaid Benefit for Children and Adolescents (2014), Centers for Medicare & Medicaid Services (hereinafter "EPSDT Coverage Guide"), p. I. n.1 quoting CMS, State Medicaid Manual §§ 5010, 5121, 5310

16.     Absent prompt treatment, an autistic child's prognosis is dramatically worsened, treatment becomes more difficult and more costly, and the long term costs to the state for special education, emergency care, restrictive placements, and lost productivity are inescapable.

17.     Failing to provide adequate ASD treatment results in lifelong social costs estimated at 3.2 million dollars per child.[5]

## LEAD PLAINTIFF ALLEGATIONS

18.     Z.M. is six year old boy.

19.      Z.M. and his mother Ashley Manley are residents of Lexington County, South Carolina.

20.      The Medicaid Act (Title XIX of the Social Security Act, 79 Stat. 286 (1965), codified at 42 U.S.C. § 1396 et seq.), mandates that states who volunteer to receive federal funding for their Medicaid programs must comply with the Medicaid Act and its implementing regulations.

21.     South Carolina participates in the federal Medicaid program.

22.     By taking federal funds for its Medicaid program, the State is <u>required</u> to provide early and periodic screening, diagnostic, and treatment ("EPSDT") services to all Medicaid eligible children under the age of twenty-one. 42 U.S.C. § 1396a(a)(10) & (43); 42 U.S.C. § 1396d(a)(4)(B); and 42 U.S.C. § 1396d(r).

23.     The catch-all provision at 42 U.S.C. §1396d(r)(5) is one of the categorically mandatory EPSDT services. In other words, for Medicaid eligible children, like Z.M.,

---

[5] Ganz, M. The Lifetime Distribution of the Incremental Societal Costs of Autism, Arch Pediatric Adolescent Medicine, 161: 343-349 (2007). Direct costs alone have been estimated at up to 2.4 million dollars per individual depending on the degree of intellectual disability. Buescher, AV, et al. Costs of autism spectrum disorders in the United Kingdom and the United States., Aug; 168(8):721-8. doi: 10.100 I jamapediatrics.2014.210 (2014).

South Carolina may not deny or fail to make available "such other necessary health care, diagnostic services, treatment, and other measures … to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. §1396d(r)(5).

24.     ABA is an approved EPSDT treatment.

25.     Joshua Baker is the Director of South Carolina Department of Health and Human Services ("SCDHHS") which is the state agency responsible for administering the federal Medicaid program in South Carolina.  Mr. Baker is named in his official capacity.

26.     On September 29, 2015, Stacey Cobb, MD, a licensed pediatric doctor and Assistant Professor for Pediatrics, confirmed Z.M. to have Autism Spectrum Disorder ("ASD") and prescribed as part of his plan, intensive ABA home therapy.

27.     On November 10, 2015,  Z.M. received his Authorization Letter from SCDHSS for Medicaid coverage of 40 line therapy hours per week, 6 lead hours per week, and 6 consultation hours per week of ABA therapy.  This authorization allowed Early Intensive Behavior Intervention Providers ("Providers") to furnish Z.M. the medically necessary services including ABA and bill Medicaid.

28.     Mrs. Manley promptly applied for but was unable to receive the medically necessary and prescribed ABA therapy for Z.M. because of the lack of Providers resulting from South Carolina's inadequate reimbursement rate.

29.     Z.M. is on a waiting list for ABA therapy and has been since Dr. Cobb confirmed his diagnosis on November 10, 2015, <u>almost 2 ½ years waiting for medically necessary treatment.</u>

30.     ABA treatment is critical at Z.M.'s age to make a behavioral impact on his adult life. Without ABA, Z.M. faces serious harm, including regression of his skills and increases in potentially dangerous behaviors as he approaches adolescence.

31.    Mrs. Manley depends on Medicaid to cover Z.M.'s medical expenses and cannot otherwise afford the costs of ABA treatment.

32.    The failure of SCDHHS to provide Z.M. and other members of his class with medically necessary, approved ABA therapy is causing Z.M. and the members of his class with irreparable harm.

33.    Z.M. is not alone, as noted above, upon information and belief there are over 1,500 children on such a waiting list and with more Providers leaving the state, the situation will get worse and not better.

34.    This is a Class action to establish the rights of Z.M. and the Class of similarly situated children and young adults he seeks to represent to secure coverage of medically necessary ABA treatment under Medicaid.

## CLASS ALLEGATIONS

35.    Z.M., through his mother, brings this action on Z.M.'s behalf and on behalf of a Class of all those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

36.    Z.M. and the members of the Class have been or will be:
   a) receiving health benefits insured by Medicaid that are subject to the Medicaid Act;
   b) professionally diagnosed with ASD;
   c) prescribed or recommended ABA treatment as being medically necessary by a physician or appropriate healthcare professional;
   d) recipient of an Authorization Letter by SCDHSS for ABA therapy;  and
   e) not currently receiving ABA therapy after attempting to apply for such services.

37.    Thus, the proposed class consists of: All current and future Medicaid-eligible persons in South Carolina under the age of twenty-one who have been diagnosed with an Autism Spectrum Disorder ("ASD"),   prescribed or recommended some level of applied behavioral analysis ("ABA") treatment as being medically necessary to

7

ameliorate their condition who were approved for ABA therapy by SCDHSS, but have been unable to receive such services after applying ("the Class").

38.     Membership in the Class is so numerous that joinder of all members is impractical. Upon information and belief, more than 1,000 Medicaid eligible children in South Carolina have an ASD and need ABA treatment.

39.     Common questions of law and fact exist, including the main issue of whether SCDHSS is violating the Medicaid Act by failing in "making medical assistance available to all [eligible] individuals" under 42 U.S.C. § 1396a(a)(10)(A), ensuring medical assistance is "furnished with reasonable promptness to all eligible individuals" under 42 U.S.C. § 1396a(a)(8) ("reasonable promptness requirement"), ensuring that the benefits available to Plaintiffs are not "less in amount, duration, or scope than the medical assistance made available to any other" eligible individual under 42 U.S.C. § 1396a(a)(10)(B) ("comparability requirement").

40.     The claims and injuries of Z.M. are typical of the claims and injuries of the other putative Class members because Z.M.: (a) is a child Medicaid recipient diagnosed with an ASD; who has (b) been recommended and approved for ABA treatment; but, (c) cannot receive medically necessary ABA therapy as a covered Medicaid service, because there are insufficient providers to provide reasonably prompt ABA therapy services and Defendant Baker and SCDHSS are not providing these services. These are the same injuries that members of the Class will suffer, unless this Court grants relief.

41.     Like Z.M., members of the putative class also are under the age of twenty-one who have been diagnosed with an Autism Spectrum Disorder ("ASD"), prescribed or recommended some level of applied behavioral analysis ("ABA") treatment as being medically necessary to ameliorate their condition who were approved for ABA therapy by SCDHSS, but have been unable to receive such services after applying.

42.     Z.M., through his mother Mrs. Manley will fairly and adequately represent and protect the interests of the Class. They intend to prosecute this action vigorously in

order to secure remedies for the Class. Counsel of record for Z.M. is experienced in federal litigation and class actions.

43.     SCDHSS, through the direction of Director Baker, under the color of law, has acted, refused to act, and/or failed to act on grounds that apply generally to the Class such that final injunctive or declaratory relief is appropriate for the Class as a whole.

## JURISDICTION AND VENUE

44.     This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), 42 U.S.C § 1983 (civil action for deprivation of rights) and 28 U.S.C. § 2201(a).

45.     Venue is proper in the District of South Carolina pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claim occurred in this District.

## COUNT I
## VIOLATION OF CIVIL RIGHTS (MEDICAID ACT)
## 42 U.S.C. § 1983

### DECLARATION OF RIGHTS

46.     Plaintiffs incorporate each allegation above as though fully set forth herein.

47.     This Count is brought solely against Defendant Baker for actions and omissions in his official capacity under color of state law.

48.     Under 42 U.S.C. § 1396a(a)(10)(A), "[a] state plan for medical assistance <u>must</u> provide . . . for making medical assistance available [for described services] to" all individuals who meet certain eligibility requirements. 42 U.S.C. §1396a(a)(10)(A).

49.     States also must provide medical assistance "with reasonable promptness to all eligible individuals," . 42 U.S.C. §§ 1396a(a)(8).

50. As of March 23, 2010[6], "[t]he term 'medical assistance' means payment of part or all of the cost of the following care and services o*r the care and services themselves, or both*." 42 U.S.C. § 1396d(a) (2013) (emphasis added).

51. Thus, SCDHSS must not only pay for the costs of the services but also ensure that the Plaintiff has access to and receive such services with reasonable promptness.

52. Z.M. and the other members of the Class do not have access to medically necessary ABA therapy and have not received services with reasonable promptness. Many, including Z.M. have been waiting for years to receive the approved, medically necessary ABA services.

53. 42 U.S.C. § 1983 can be used to vindicate violations of federal statutory rights. See also Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 105, 110 S. Ct. 444, 448, 107 L. Ed. 2d 420 (1989) ("As the language of the statute plainly indicates, the remedy encompasses violations of federal statutory as well as constitutional rights.")

54. 42 U.S.C. § 1396a(a)(10)(A) and 42 U.S.C. §§ 1396a(a)(8) providing access to sufficient and reasonably prompt medical assistance are federal rights enforceable under 42 U.S.C. § 1983 .

55. Likewise, 42 U.S.C. §1396d(r)(5) is a mandatory EPSDT services providing a right to "such other necessary health care, diagnostic services, treatment, and other measures … to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan" and is therefore enforceable under 42 U.S.C. § 1983.

---

[6] As part of its enactment Patient Protection and Affordable Care Act, Congress amended the definition of "medical assistance" under 42 U.S.C. § 1396d(a).  As one court has already noted, it appears that Congress intended to squarely address the circuit split and "to clarify that where the Medicaid Act refers to the provision of services, a participating State is required to provide (or ensure the provision of) services, not merely to pay for them[.]" John B. v. Emkes, 852 F. Supp. 2d 944, 951 (M.D. Tenn. 2012).

56. Defendant Baker in his official capacity and under the color of state law is depriving Z.M. and the members of the Class of their rights secured by the Medicaid Act to sufficient and reasonably prompt medical assistance in the form of medically necessary and approved ABA therapy.   42 U.S.C.A. § 1983

57. The Plaintiff requests this court declare that Defendants' actions and inactions violate 42 U.S.C. § 1983, Title XIX of the Social Security Act and specifically their rights secured by the Medicaid Act to sufficient and reasonably prompt medical assistance in the form of medically necessary and approved ABA therapy.

## COUNT II
## INJUNCTIVE RELIEF

58. The actions of the preceding paragraphs are alleged as if fully repeated herein.

59. The Plaintiff Z.M. and the Class are suffering and continue to suffer irreparable injury by being denied their rights to receive medically necessary ABA therapy.

60. This is especially harmful to the Plaintiff and class being children whose success in ABA therapy requires early intervention and treatment.

61. The remedies available at law, such as monetary damages, are inadequate to compensate for that injury.

62. The Defendant Baker and SCDHSS have been willing to authorize or pay for ABA therapy, but the systemic problem of inadequate reimbursement rates which have directly led to a lack of ABA providers and long delays in treatment will not be solved only by awarding the Plaintiff monetary damages.

63. Considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted.

64. The Plaintiffs are suffering direct, serious, and irreversible harm, and will, in the future, suffer even greater harm, if the injunction is not issued. The plaintiffs are not receiving the ABA therapy and other benefits to which they are entitled under

Medicaid. Consequently, they are failing to develop skills, which will enable them to achieve their greatest functional capacity and highest level of independence.

65.	They may even be losing skills previously acquired because the services they are receiving are insufficient to maintain them.

66.	The lack of available care and treatment is also providing undue stress and hardship on the families who are the first line of support for these children in desperate need of care.

67.	The harm to the Defendant Baker and SCDHSS is the additional budgetary allocations, time and effort required to recruit sufficient Providers to provide the necessary ABA services within a reasonable time.

68.	However, Medicaid is a voluntary program. Medicaid provides entitlements.

69.	Budgetary constraints, however, are no defense for the failure to provide Medicaid entitlements. See Doe v. Chiles, 136 F.3d 709, 722 (11th Cir. 1998); Alabama Nursing Home Ass'n v. Harris, 617 F.2d 388, 396 (5th Cir. 1980) (stating that "inadequate state appropriations do not excuse noncompliance")

70.	Also, the evidence shows that not providing ABA therapy **NOW** will result in much higher costs to the state in the long run.  A central purpose of EPSDT is to "[a]ssure that health problems found are diagnosed and treated early, before they become more complex and their treatment more costly.

71.	Failing to provide adequate ASD treatment results in lifelong social costs estimated at 3.2 million dollars per child. (See footnote 5, supra.)

72.	The public interest would not be disserved by a permanent injunction.

73.	While the public has an interest in conserving public funds, the long-term budgetary concerns will better served by granting the injunction. It will be far more expensive to pay for institutionalizing eligible persons.

74.     In addition to budgetary concerns, other public interest concerns weigh in favor of granting the injunction. The public is certainly much better served when those with ASD achieve their greatest degree of independence and functional capacity.

75.     The public is also much better served when families are not subjected to unnecessary stresses in caring for their disabled family members and when families are permitted to stay intact instead of being forced to institutionalize their loved ones when the strain of meeting their needs, or failing to meet their needs, becomes too great.

76.     These concerns prompted Congress to provide these Medicaid entitlements in the first place.

77.     This court should issue appropriate injunctive relief to enjoin Defendants from continuing to violate 42 U.S.C. § 1983, Title XIX of the Social Security Act and causing irreparable injury to Z.M. and the members of the Class from receiving medically necessary and approved ABA therapy.

78.     The court should further require Defendant Baker and SCDHSS to take appropriate steps to remedy their violations.

**WHEREFORE**, the Plaintiff, on behalf of himself and all those in the Class similarly situated, respectfully requests that the Court:

a. retain jurisdiction over this action;

b. certify this case to proceed as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2);

c. declare that Defendants' actions and inactions violate 42 U.S.C. § 1983, Title XIX of the Social Security Act,;

d. issue appropriate injunctive relief to enjoin Defendants from continuing to violate 42 U.S.C. § 1983, Title XIX of the Social Security Act, and to take appropriate steps to remedy their violations;

e. issue such other relief as may be just, equitable, and appropriate,

including an award of reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §§ 1988 and 12205 and 29 U.S.C. § 794a(b).

Respectfully submitted,

/s/ Tobias G. Ward, Jr.
Tobias G. Ward, Jr. (Fed. ID No. 4520)
J. Derrick Jackson (Fed ID No. 5836)
TOBIAS G. WARD, JR., P.A.
534 Congaree Avenue
Post Office Box 50124
Columbia, South Carolina 29250
(803) 708-4200
tw@tobywardlaw.com
Attorneys for Plaintiff

May 18, 2018
Columbia, South Carolina.